**Opinion issued August 27, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00435-CV

————————————

**FARAJ SAID, GHASSAN SAID, IBRAHIM SAID, NOOR SAID ENTERPRISES, BUDGET COLLISION, INC., AND NATIONAL AUTO COLLISION, INC., Appellants**

**V.**

**ALLSTATE INSURANCE COMPANY, ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, ALLSTATE COUNTY MUTUAL INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, AND ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, Appellees**

On Appeal from the 165th District Court
Harris County, Texas
Trial Court Case No. 2009-79722

**MEMORANDUM OPINION**

This is an appeal from a judgment on claims for fraud and unjust enrichment relating to insurance claims for vehicle tows. After determining that the appellants engaged in discovery abuse, the trial court struck their pleadings and entered a default judgment on the issue of liability. The court then held a trial on damages, and it awarded actual and exemplary damages to the appellees. On appeal, the appellants argue that the trial court erred by awarding damages based on a legally incorrect understanding of what constitutes a "nonconsent" tow under a City of Houston ordinance. We reverse and remand for a new damages hearing.

**Background**

Appellants Faraj Said, Ghassan Said, Ibrahim Said, Noor Said Enterprises, Budget Collision, Inc., and National Auto Collision, Inc. are all engaged in the business of towing, vehicle storage, and vehicle body repair. They were paid by various appellee Allstate insurance companies (collectively, Allstate) for providing services to Allstate insureds. This litigation arises from Allstate's claims of fraud and unjust enrichment against the appellants.

The City of Houston limits the amount that a towing company may charge for towing a vehicle without the consent of the vehicle's owner. *See* HOUS., TEX., CODE OF ORDINANCES ch. 8, art. III, § 8-123 (2005 & Supp. 2011). Allstate alleged that the appellants charged towing fees in excess of these limits by

2

mischaracterizing "nonconsent" tows as "consent" tows, which do not have a regulatory limit on the amounts that may be charged for them. Allstate also alleged that the appellants falsely represented on many occasions that the towing, storage, or "tear down" of a vehicle was necessary or authorized by a vehicle owner when it was not.

The trial court struck the appellants' pleadings for discovery abuse and thus found that the issue of liability was conclusively established in favor of Allstate. At a hearing to establish the amount of damages, Allstate presented a witness who had reviewed 350 claims submitted to Allstate by the appellants from 2001 to 2007. Based on whether Allstate received a police report associated with the claim, the investigator determined that Allstate had been overcharged on 90 claims. The investigator testified that for each of those 90 claims, the police report indicated that the police initiated the tow or that the tow occurred at the direction of the police. The investigator prepared a summary of the 90 claims and determined the total amount of putative overcharges by subtracting the maximum amount allowed to be charged under the municipal regulations from the amount Allstate actually paid for each claim. Allstate offered into evidence the summary listing the total amount of damages it claimed against each defendant, but it did not offer the underlying copies of the claims files.

3

The appellants' attorney cross-examined the investigator about his classification of "nonconsent" and "consent" tows based on the definitions of those terms found in the city ordinance. For example, he inquired about whether the vehicles had to be taken to a vehicle storage facility, rather than the tow merely being initiated at the direction of the police, for a tow to be a "nonconsent" tow in 2001 and 2002. Counsel also attempted to ask whether the investigator considered a claim to be a "nonconsent" tow if there was a tow ticket signed by the vehicle owner. Allstate objected to these lines of questions, arguing that inquiry about the definition of a "nonconsent" tow went to liability, not to how the investigator had determined damages. The trial court sustained these objections.

After the hearing, the trial court rendered final judgment in favor of Allstate. It found the appellants jointly and severally liable for damages in the cumulative amount of $70,087.71. In addition, the trial court awarded exemplary damages in identical amounts as awarded for actual damages. After unsuccessfully moving for a new trial, the appellants filed this timely appeal.

**Analysis**

When a no-answer default judgment is rendered, the defendant's liability for all pleaded causes of action is conclusively established and all allegations of fact in the petition, except the amount of unliquidated damages, are deemed admitted. *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731–32 (Tex. 1984). The court

rendering a default judgment must hear evidence of unliquidated damages. TEX. R. CIV. P. 243; *Holt Atherton Ind., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992). At the trial on damages, the plaintiff must prove by competent evidence the amount of unliquidated damages consistent with the cause of action pleaded. *Morgan*, 675 S.W.2d at 732; *Whitaker v. Rose*, 218 S.W.3d 216, 220 (Tex. App.—Houston [14th Dist.] 2007, no pet.). The damages must be ascertainable by reference to some fairly definite standard, established experience, or direct inference from known facts. *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 242 S.W.3d 67, 72 (Tex. App.—San Antonio 2007, pet. denied); *A.B.F. Freight Sys., Inc. v. Austrian Imp. Serv., Inc.*, 798 S.W.2d 606, 615 (Tex. App.—Dallas 1990, writ denied).

The legal and factual sufficiency of the evidence supporting an award of unliquidated damages after a default judgment may be challenged on appeal. *Paradigm Oil*, 242 S.W.3d at 72; *Whitaker*, 218 S.W.3d at 221; *see Holt Atherton*, 835 S.W.2d at 83–84. In conducting a legal-sufficiency review, we credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We will sustain a legal sufficiency challenge if the record shows: (1) a complete absence of a vital fact; (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence

conclusively establishes the opposite of a vital fact. *Id.* at 810. We consider the evidence in the light most favorable to the finding and indulge every reasonable inference that would support it. *Id*. at 822.

In a no-answer default judgment, all facts properly pleaded are deemed admitted. *Morgan*, 675 S.W.2d at 732; *Whitaker*, 218 S.W.3d at 220. In its pleadings, Allstate alleged that the appellants committed fraud and unjustly enriched themselves because they characterized tows as "consent" tows when in fact they were "nonconsent" tows under the municipal ordinances.[1] Allstate did not allege in its pleadings that any particular tow was falsely classified as a "consent" tow. Instead, Allstate alleged generally that the appellants "in many cases" represented that a claim was related to a "consent" tow when in fact it was a

---

[1] In its appellate brief, Allstate argues that the applicable definition of "nonconsent" tow is that found in Texas Transportation Code in force at the time of the charges, rather than the definition found in the city ordinance. *See* Act of June 16, 2001, 77th Leg., R.S., ch. 1303, § 1, 2001 Tex. Gen. Laws 3192 (effective Sep. 1, 2001) (current version at TEX. OCC. CODE ANN. § 2308.201 (West 2012)) ("In this section: "Consent tow" . . . does not include a tow of a motor vehicle initiated by a peace officer investigating a traffic accident or a traffic incident that involves the vehicle."). Allstate did not plead that the appellants had violated the Texas Transportation Code, but instead pleaded that the appellants had violated the municipal regulations on "nonconsent" tows. *See Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 732 (Tex. 1984) (noting that in an unliquidated damages hearing after a no-answer default, that the plaintiff is entitled to recover damages arising only from its cause of action). The provision of the Texas Transportation Code that Allstate references does not regulate the fees that may be charged for a "nonconsent" tow. *See* Act of June 16, 2001, 77th Leg., R.S., ch. 1303, § 1, 2001 Tex. Gen. Laws 3192.

"nonconsent" tow. Accordingly, it remained for Allstate at the damages trial to establish which tows fit into the category of "nonconsent" tows; otherwise, Allstate could have used the default liability finding to cover every claim the appellants made for a "consent" tow, regardless of whether it was merited or not. *See Holt Atherton*, 835 S.W.2d at 85 (claimant must show damages were caused by event sued upon).

Allstate presented the testimony of its investigator and his damages summary to establish the amount of its claimed damages. The investigator testified that each tow that he included in his damages calculations had "indications the police initiated the tow or the tow was done at the direction of the police." He also testified that all of the 90 claims for which Allstate sought damages were City of Houston tows. Appellants argue that the city's definition of "nonconsent" tows is incompatible with the investigator's definition, so that the investigator may have incorrectly included certain charges in his damages calculation.

The interpretation of ordinances, which are interpreted by the same rules of construction that apply to statutes, is a question of law. *Howeth Invs., Inc. v. City of Hedwig Village*, 259 S.W.3d 877, 904 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). We review the trial court's construction of a statute de novo. *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). If the words of a statute are clear and unambiguous, we apply them according to

7

their plain and common meaning. *Id.* The investigator's criteria for identifying "nonconsent" tows does not match the definition of a "nonconsent" tow in the city ordinance, which is:

> [T]he tow of a motor vehicle in every instance in which the vehicle owner is unwilling or unable to designate a tow operator to remove the vehicle, including instances in which the vehicle is: (i) abandoned or stolen, or (ii) being operated by a person who is the subject of a custodial arrest or who is physically or mentally unable or unwilling to request a tow operator or destination, when a law enforcement officer determines that no other authorized person is present and able to remove the vehicle.

HOUS., TEX., CODE OF ORDINANCES ch. 8, art. III, § 8-101 (2005 & Supp. 2009). Under the city ordinance, a "nonconsent" tow must involve the vehicle owner being "unwilling or unable to designate a tow operator." *Id.* This can include when the vehicle is abandoned or the driver is incapacitated, and an officer determines that no one else can remove the vehicle. *Id.* This is a different and more limited set of circumstances than when the police merely initiate or direct that the tow take place—the definition used by Allstate's investigator.

Although the appellants' attorney attempted to ask for more details about the tows that were included in the damages summary, the trial court prevented him from inquiring further into how the investigator had determined whether a claim was for a "nonconsent" tow. For instance, the appellants' attorney attempted to ask if the damages calculation included tows when the vehicle owner signed a tow receipt, which may have indicated that the vehicle owner was willing or able to

8

designate the tow operator and, thereby, that the tow was not a "nonconsent" tow. But the trial court sustained Allstate's objection to these questions, preventing the presentation of evidence on the basis for the investigator's "nonconsent" determinations.

In our legal sufficiency review, we cannot disregard evidence that an expert witness's conclusion was based on unfounded assumptions. *See City of Keller*, 168 S.W.3d at 813. Allstate's investigator testified that he had determined that all the claims that he included in the damages calculation, which were all City of Houston claims, involved "nonconsent" tows. But he also testified that this conclusion was based on a definition of "nonconsent" which was legally incorrect under the city ordinance. Beyond the testimony regarding the definition the investigator had used, Allstate prevented the introduction of evidence allowing the appellants to dispute the conclusion that all 90 tow claims were "nonconsent" tows under the ordinance. As a result, we have no factual basis to affirm the investigator's conclusion that damages were authorized for all of the claims. *See Lefton v. Griffith*, 136 S.W.3d 271, 277–78 (Tex. App.—San Antonio 2004, no pet.) (holding evidence was legally insufficient to support damages award when there was no evidence for how plaintiff came to conclusions regarding amounts of damages).

Proof of a casual nexus between the event sued upon and the plaintiff's injuries is necessary to ascertain the amount of damages to which the plaintiff is entitled. *Morgan*, 675 S.W.2d at 732. The events Allstate sued upon were overcharges for "nonconsent" tows under the municipal ordinances. Once Allstate presented evidence that a given tow was a "nonconsent" tow under the city ordinance, it was entitled to the award of damages for that tow. But Allstate was not entitled to recover for tows in the absence of evidence that they were "nonconsent" tows. At the damages trial, Allstate objected to the presentation of evidence concerning whether all of the tows for which it sought damages met the city's definition of "nonconsent." Thus, by using the incorrect definition of a "nonconsent" tow and a damages summary which may have included tows that were both "consent" and "nonconsent" tows under the ordinance, Allstate did not show that it was entitled to recover damages for all 90 of the claims. *See Holt Atherton*, 835 S.W.2d at 85 (holding legally insufficient evidence supported lost profits award when plaintiffs failed to provide a specific lost contracts and time-frame for measuring their lost profits); *Lefton*, 136 S.W.3d at 277–78 (holding legally insufficient evidence to support damages award when plaintiff failed to explain how she arrived at the values for economic losses she sustained).

We hold that the evidence is legally insufficient to support the award of damages for overcharges for "nonconsent" tows under Allstate's pleadings.

Having sustained the appellants' issue regarding the amount of damages awarded, we need not consider their other issues.

## Conclusion

The record does not provide any means of distinguishing between the amounts erroneously awarded for exceeding the city's limit on "nonconsent" towing charges and the other claims for which Allstate sought damages, such as unnecessary or unauthorized fees for transfer or storage of vehicles. Because Allstate requested, and the trial court awarded, exemplary damages in the same amount as the actual damages award, the amount of exemplary damages was also intertwined with amount of actual damages awarded for "non-consent" tows.

Accordingly, we reverse the award of damages and remand for a new trial on damages. *See* TEX. R. APP. P. 44.1(b) (allowing partial reversal only if error affects part of, but not all, the matter in controversy and that part is fairly separable); *see also Holt Atherton*, 835 S.W.2d at 86 (when evidence of unliquidated damages not fully developed, reverse and remand appropriate as to all of damages award after sustaining no-evidence point as to some of the damages award).

Michael Massengale
Justice

Panel consists of Chief Justice Radack and Justices Sharp and Massengale.

11